Purves vs. Insurance Co.

## No. 10,852.

### JOHN T. PURVES VS. GERMANIA INSURANCE COMPANY, AND VS. FIREMEN'S INSURANCE COMPANY, CONSOLIDATED.

The insured may either expressly or by implication waive the preliminary proof and the certificate of loss.

There was an implied, if not an express waiver, of the defects of the certificate.

The contract of insurance is one of indemnity.

The insurer obligates himself to make good such loss or damage as may be sustained not exceeding the amount of the policy.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Jos. N. Wolfson* and *B. R. Forman* for Plaintiff and Appellee:

When the proofs of loss by fire of property insured, sustained by expert and disinterested evidence, show the loss to have been at least $6333.50, the judgment should be for that sum, there being no suggestion of fraud or ill practice on the part of the assured.

An exception of prematurity must be filed and decided *in limine*. Noble vs. Martin, 7 N. S. 282; Howard vs. Columbia, 1 La. 420; Benedict vs. Williams, 4 R. 392: Pecquet vs. Pecquet, 17 An. 232.

And when answer is filed and trial entered upon without a decision of the exceptions, it is waived. Lafon vs. Riviere, 1 N. S. 130; Kemp vs. Hunt, 4 L. 482; Gay vs. Andry, 14 L. 288; Tupery vs. Edmondson, 32 An. 624. Mix vs. Creditors, 39 An .624.

When *proofs of loss* are retained by the insurer without objection, and the assured is examined before a notary on the demand of the insurer, any defect in the proofs is waived. Wood on Insurance, pp. 969-973.

*Buck, Dinkelspiel & Hart*, for Defendants and Appellants:

The certificate of the notary required by the policy must be furnished; where defective and issued by an interested person it can not be considered. 19 Ind. L. J. 26; 20 Hun. 93.

Where the plaintiff's proof is defective and unsatisfactory as to the amount of loss in a suit on an insurance policy, he will be non-suited.

An examination of the assured does not waive the proofs of loss, nor can a waiver be presumed when the whole course of the defendants is to insist on same. 4 Nevil, 102; 8 S. W. 630.

Proofs of loss, if not accompanied by the notary's certificate, are not made as required by the policy; incomplete proofs are no proofs.

A defence of over-valuation does not prevent the company from setting up that the proofs were defective.

The sixty days before which suit can be brought commence to run only from the time absolutely perfect proofs have been furnished.

It is not necessary to except to the charge of a judge to the jury in a case appealable both on the law and the facts. 37 An. 81.

The Supreme Court will remand a case when the jury apparently have not properly considered it. 8 New Series, 167.

This court will not examine figures and calculations *not* passed upon by the lower court.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff was the owner of generators, ferment tanks, mash tubs, vinegar tanks and such implements as are needful in carrying on the business of manufacturer of vinegar.

He also had vinegar in tanks and in store at his plant, one-half of which was - insured in the Germania Insurance Company, in the sum of $5000, and the other half, in a similar amount, in the Fireman's Insurance Company, as follows:

On generators, ferment tanks, mash tubs and vinegar tanks, and such
   other implements usual to their trades, as vinegar manufacturers........ ..$5,500 00
On stock of vinegar in store and in tanks ...... ................ - ...... . ........... ........ 2,300 00
On boiler, pump and machinery ................................ .... .... ....................·............ ........ 1,000 00
On stock of sugar and molasses in barrels ... ...................................... .. .... ..... 950 00
On empty barrels......... .............. ....... ............ ........................... .. .......... 200 00
On office furniture .............. ............ ..................... .... ................... ..... ..... 50 00

   Total........................ .......... ..... ....... ......................................... ....................... $10,000 00

The policy issued by the Fireman's Insurance Company is dated the 13th day of December, 1888, and that issued by the Germania Insurance Company is dated the 16th day of November, 1889. At the end of the year they were renewed and continued another year.

At the time the policies were issued the property belonged to the Southern Vinegar Company.

In March, 1889, it was sold to plaintiff for $4000; the policies were transferred in due form.

On the 3d day of July, 1890, the plant was nearly all destroyed by fire.   The following is a detailed list furnished by plaintiff:

Sixty-two generators, each containing thirty bushels of beech shavings.

Each generator contained 8370 gallons of vinegar, also six gallons of ninety-grain vinegar and ten gallons of a lower grade.

Thirty large generators which contained each 120 bushels of beech shavings and eight barrels of eighty–grain vinegar, besides eighteen gallons also of a higher grade and twenty-five of lower grades.

Two tanks.

Appurtenances on tanks.

Six " knocked down " cisterns; vinegar on hand, 6550 gallons;

2 tanks with 3000 gallons low wines, $150, and 3 tanks with 9000 gallons of mash.

The property is valued in the "proof of loss" at ............. ........ .. ................................$7,084 32
The property saved is valued ........... .......................... ........ ...................................... 1,514 11
                                                                                                        $5,570 21

The generator is a vessel made of second hand (oak) wine cask. They are placed uprightly. They have a top and heading. The tops are perforated and placed in the vessel, resting on the shavings.

Beech shavings are placed in the vessel and pressed. Afterward the generator is charged with vinegar, which saturates the shavings.

Thus saturated they will last as many as fifteen years for vinegar manufacturing purposes.

A preparation called "mash" is the first process.

It consists of molasses, water and yeast fermented.

It is poured into stills and distilled into low wines.

It passes to a receiving tank, and from it to the generator where the vinegar is formed.

The vinegar is daily drawn from the generators.

The case was tried by jury; their verdict was for plaintiff.

EXCEPTION.

The defendant's exception to the prematurity of the action presents the first question which arises for our decision.

It was referred to the merits by consent of all parties.

A few days subsequent to the fire the plaintiff sent his preliminary proofs to adjust the loss to the defendants.

They were returned as incomplete.

Others were written on the 16th of July, and a few days after were placed in defendant's hands, and he acknowledged their receipt in writing, mentioned no defects and did not present any objection.

One of these was mislaid; on the adjuster's request, another copy was furnished.

In the certificate appended to the proof the notary did not certify that he was the nearest notary to the place of the fire, and that he had no interest in the loss.

The plaintiff testifies that this omission was waived by the adjuster.

The adjuster testifies that he only waived the clause of the policy relating to the notary's residence.

On defendant's notice, plaintiff produced his books, as required; he was also examined at length as to his loss, at which examination defendant's adjuster was present and propounded such questions as he saw proper.

The adjuster wrote out his estimate of loss, which was not accepted.

On the 21st of August a certificate was made by another notary, setting forth that he was without interest or concern in the loss.

Plaintiff testifies, substantially, that it was intended as cumulative testimony and not as a waiver of the final proofs in possession of the defendants.

In September the defects of the original certificates were called to plaintiff's attention, and he was notified that the 2d of that month was the date of proof.

Considering that the first proof was returned for correction; that the second was retained by defendants; that the assured submitted his books, and that he was examined as to his loss by defendants; that a second copy was furnished of mislaid copy, and a second certificate was prepared as additional formality; that no notice of any defect was given prior to September, after further attempt at settlement had been abandoned; the case will not be dismissed.

"If the adjuster's conduct would induce an honest belief that the proof then being made were all the company required, and the assessed did so believe, the jury might find that formal proof were waived." 47 N. W. Rep. 149.

The facts in the case of Daniel vs. Ins. Co., 35 An. 99, are similar in many respects.

The court held that the assured may waive preliminary proof, either expressly or by implication.

### ON THE MERITS.

The contract of insurance is one of indemnity.

The insurer obligates himself to make good such loss or damage as may be sustained, not exceeding the amount of the policy.

The defendants contend that the amount claimed exceeds the value of the property, and that part of the property destroyed was not covered by the policy.

In interpreting the contract, we will commence by charging up the value of the property, in regard to which there is less difference.

Purves vs. Insurance Co.

The thirty large generators are not over-valued at $22 each, $660. The witnesses do not materially differ about these, and the defendants substantially admit the correctness of the estimate. The records do not disclose that sixty-two generators at $8.50 is an overcharge. Total, $527.

The defendants admit that they are worth about $7 each.

One of the witnesses for plaintiff, who is one of the directors of the defendant company, the Germania, and who was president of the Southern Vinegar Company, from whom plaintiff bought the plant, testified that they cost a larger amount.

With reference to the vinegar shavings, this witness said that it takes about a bushel of shavings to every ten gallon capacity.

That he bought the shavings, and in buying them followed that proportion. That while he was connected with the management they took out about half the shavings and charged the generators with fresh shavings.

The witnesses differ materially respecting the number of bushels of shavings.

We have determined to adopt that proportion (a bushel of shavings to every ten gallon capacity), in establishing the quantity in the small generators, viz.:   1035 x 28c. = $289.80.

This proportion will not be followed in so far as relates to the large generators, for the reason that the companies have admitted a larger number, and one of their witnesses on the subject testifies that 100 bushels were placed in several of these generators, charged under his direction.

These large generators produced more proportionately than the small ones.

The number of 100 is taken as correct, making, total, 3000 bushels at 28c., $840.

The quantity of vinegar in the tanks has given rise to a number of estimates.

The vinegar could not be measured in the generators, at any time after they were charged, for the least handling would have destroyed them.

After weighing the conflicting testimony and endeavoring, as far as possible, to make it conform to a proportionate number of shavings used, we conclude that the sixty-two generators contained each 65 gallons of vinegar; 4030 gallons at 16c., $644.80.

We make a proportionate deduction from the quantity of the vinegar which was in the large generators, to the number of bushels of shavings found by us, viz.: five-sixths, $1440.

· The witnesses have all testified that the vinegar is all used in saturating the shavings, except, possibly, comparatively few gallons at the bottom of the generators.

In throwing away parts of the saturated shavings, as was proven, some of the vinegar must also have been lost.

Of this we have kept account by making deductions as above.

There are amounts charged for vinegar in process of manufacture and vinegar manufactured in the generators at the time of the fire.

The total is $241.82.

Part of this is for the manufactured article, not yet drawn: amount, $95.90.

It was merchantable vinegar, which would have been drawn that day had not the fire occurred.

The remainder is for vinegar that settles at the bottom of the tank. This remainder, viz.: $145.92, is not sustained by the evidence.

The plaintiff claims the value of two tanks and appurtenances destroyed, $76.

This is covered by the policy.

The claim for "knocked down" cisterns is not within the terms of the insurance.

On statement two of the "proof of loss" claimed under the following reference to the property in the policy, viz.:

"One stock of vinegar in store and in tank are mash and "low wines."

The mixture in process of manufacture is not vinegar and is not included within the terms of the policy insuring vinegar, nor is it included within the clause insuring implements of the plant.

It was not an instrument of the plant, nor a tool, utensil or vessel, and, therefore, it is not an implement.

The president of the company who insured the plant originally so understood.

The insured testifying says:

"I claim nothing out of the company, nothing but the loss of the vinegar and the generators."

It is proven that the plaintiff lost in addition 6550 gallons of vinegar worth $458.50, that is five barrels and seventeen and a half half-bar-

rels of vinegar.   Plaintiff admits in his testimony that there should be deducted an amount on statement three of $48.51.

An amount, it is claimed, should be deducted for depreciation in the value of the property.

The testimony to prove depreciation is conflicting.

We have appraised the implements of the plant and the vinegar separately at their value.

We did not consider the value of the plant as a whole.

Its life is at least ten years.

It was established not long since; it had been repaired and improved.

It was in good order.

Our conclusion will not admit of deductions for deterioration.

The value of the property destroyed amounts to $5032.10, from which we deduct the amount for which the property damaged sold, $148.26; vinegar saved, $48.51; balance $4835.33.

The fermentation and distillation of mixtures in the manufacture of vinegar was a new subject to us.

We have given it our best attention and conclude that the verdict should be reduced to said amount.   There being two judgments in the case as consolidated, each judgment is amended and the amount reduced.

It is, therefore, ordered, adjudged and decreed that the verdict and the judgment appealed from in said case be amended by reducing the same from two thousand seven hundred and thirty-two dollars and ninety-five cents ($2732.95) to two thousand four hundred and seventeen dollars and sixty-five cents ($2417.65), with interest at the rate of 5 per cent. per annum on the last mentioned amount, from judicial demand.   As amended judgment is affirmed.   Plaintiff and appellee to pay costs of appeal.